## HAMPSHIRE COUNTY.

### Samuel Pinch *vs.* Edward Anthony & others.

If the owners of lands agree in writing, for a valuable consideration, to pay to another person a certain sum " out of the proceeds of the sale of said lands, if the same shall be sold, or, if the lands shall not be sold, and a company shall be formed for working the mines thereon," then to convey to him stock to that amount, "it being understood and agreed by and between the parties hereto that the foregoing amount, whether of cash or stock, is to be a charge on the joint estate " of the owners, a charge in the nature of a lien upon the lands is thereby created, which may be enforced in equity, upon a proper case being made, against all who take a title to the lands with notice.

Bill in equity, filed April 16th 1861, alleging that in 1849 the plaintiff was a skilful miner, employed at Crown Point, and was induced by persons who owned lands in Northampton, Southampton, Easthampton and Westhampton, to leave his employment for the purpose of conducting mining operations upon said lands ; that those persons, after executing to the plaintiff a mortgage on the mineral rights in said lands to secure the sum of $1500, for his services and moneys agreed to be paid by him, conveyed the premises to Samuel Coit, who, in consideration of the plaintiff's skill and labor in conducting mining operations thereon, and of moneys advanced by him, executed to the plaintiff another mortgage on said mineral rights to secure the sum of $5000 ; that afterwards, in 1852, Edward Anthony purchased the premises in behalf of himself and other persons, who were made defendants, and received a deed thereof, and that, on the 27th of October 1853, said Anthony and the other persons in behalf of whom he acted, as parties of the first part, entered into the following agreement with the plaintiff, as the party of the second part:

" Whereas the parties of the first part are joint owners of certain mineral lands situated in Southampton, Easthampton and Westhampton, in Hampshire county, in the State of Massachusetts, and which said property is now standing in the name of Edward Anthony ; and whereas it is proposed either to sell said mineral lands or to form a joint stock company for

the purpose of working the mines on said lands; and whereas the parties of the first part have agreed, in consideration of the services rendered and to be rendered by the said Samuel Pinch, that he the said Samuel Pinch shall have an interest in the proceeds of the sale of said lands, if the same shall be sold, or, if a joint stock company shall be formed, then that he shall have a certain amount of the stock of the company; now, therefore, this agreement witnesseth, that the said parties of the first part, in consideration of the foregoing agreement, and in further consideration of one dollar to each of them in hand paid, the receipt whereof is hereby acknowledged, hereby agree to pay or cause to be paid to the said Samuel Pinch, his heirs or assigns, out of the proceeds of the sale of said lands, if the same shall be sold, the sum of $6500; or, if the said lands shall not be sold, and a company shall be formed for the purpose of working the mines thereon, then and in that case to convey or cause to be conveyed unto the said Samuel Pinch, his heirs or assigns, full paid up stock in said company, not liable to assessment, to the amount of $6500, at the par value of said stock; it being understood and agreed by and between the parties hereto that [of] the foregoing amount of $6500, the sum of $5000, whether of cash or stock, is to be a charge on the joint estate of the parties of the first part in proportion to their respective interests, and the remaining $1500 is to be a charge on the separate estate of Albert W. Wright. And the said Samuel Pinch on his part agrees, in consideration of the foregoing agreements, to remain and continue in the employ of the parties of the first part so long as they shall require his services, but not exceeding one year from the date hereof, for the same salary and compensation that has been heretofore paid to him, to wit, $100 per month, and the house and lands now occupied by him rent free; and if his services shall not be required for the full term of one year, he hereby agrees to leave the employ of the parties of the first part, and surrender the possession of the house and lands to them at any time, after receiving one month's notice from them."

The bill further alleged that the plaintiff entered the service

of said Anthony and those for whom he acted, and continued therein so long as his services were required, and until the filing of this bill, although since 1854 the defendants have abandoned mining operations in said lands; and that he is entitled to maintain a charge and lien upon said lands for the sum of $6500, and interest from the date of the agreement, and to have the lands sold, and the proceeds applied in payment of his claim.

The plaintiff afterwards filed a supplemental bill, alleging that on the 26th of February 1863 the said Anthony, with a view to the formation of a joint stock company, conveyed the premises to Stephen Hill, Jr., who shortly thereafter conveyed the same to the "Manhan Silver Lead Mining Company," which the plaintiff believes to be a joint stock company; that since the conveyance to Hill, the plaintiff, at Hill's request, has devoted his attention to the development of said mines, and Hill has frequently assured the plaintiff that there should be a speedy and satisfactory settlement of his claim, but that such settlement has never been made. The plaintiff therefore prayed that said Hill and Manhan Silver Lead Mining Company might be made defendants, and that he might have such relief as he might be entitled to in equity.

The defendants filed a general demurrer, and the case was thereupon reserved for the determination of the whole court.

*G. T. Davis,* (*S. O. Lamb* with him,) for the defendants. 1. The plaintiff has a complete remedy at law. 2. The language of the agreement does not import the giving of a lien upon the real estate, or its proceeds. No interest in the premises was conveyed. It was merely an executory agreement, designating the fund out of which the plaintiff should be paid. *Rogers* v. *Hosack,* 18 Wend. 319. *Brainard* v. *Burton,* 5 Verm. 97. *Bonsey* v. *Amee,* 8 Pick. 236. *Webb* v. *Walker,* 7 Cush. 50. *Clarke* v. *Sibley,* 13 Met. 211. *Hunt* v. *Rousmanier,* 8 Wheat. 174. The bill alleges no unreasonable neglect, and no demand.

*C. Delano,* for the plaintiff, cited 1 Story on Eq. §§ 674, 677; 2 Ib. §§ 1207, 1215–1217; *Bradley* v. *Root,* 5 Paige, 632; *Silk* v. *Prime,* 1 Bro. C. C. 138, *n.*

BIGELOW, C. J.   The bill sets out a case which clearly enti-
tles the plaintiff to equitable relief.   The rule is perfectly well
settled, that a party may by express agreement create a charge
or claim in the nature of a lien on real as well as personal estate
of which he is the owner or possessor, and that equity will
establish and enforce such charge or claim, not only against the
party who stipulated to give it, but also against third persons,
who are either volunteers or who take the estate on which the
lien is agreed to be given, with notice of the stipulation.   Such
an agreement raises a trust which binds the estate to which it
relates ; and all who take title thereto, with notice of such trust
can be compelled in equity to fulfil it.   *Legard* v. *Hodges,* 1
Ves. Jr. 477.   *Roundell* v. *Breary,* 2 Vern. 482.   *Power* v
*Bailey,* 1 Ball & Beat. 49.   *Gardner* v. *Townsend,* Coop. Eq
Cas. 303.   *Wellesley* v. *Wellesley,* 4 Myl. & Cr. 561.   It is ob-
vious that the law gives no remedy by which such a lien can be
established, and the trust thereby created be declared and en-
forced.   Equity furnishes the only means by which the property
on which the charge is fastened can be reached and applied to
the stipulated purpose.

On looking at the agreement set out in the bill, there is no
room for doubt as to the intent of the parties to give to the
plaintiff a claim on the lands therein described, as security for
the money which they stipulated to pay to him.   The agree-
ment is not only that he shall have an interest in the proceeds
of the sale of said lands, if the same should be sold, or a cer-
tain amount of stock in a joint stock company, if one should
be formed, for the amount which they agreed to pay, but it is
expressly stipulated that the amount due to him, " whether of
cash or stock, is to be a charge on the joint estate of the parties,
in proportion to their respective interests," to the extent of five
thousand dollars, and the residue of the sum, being fifteen hundred
dollars, " is to be a charge on the separate estate " of one of the
parties.   It is difficult to see how an intent to create a lien on
the lands named could be more clearly expressed.   The precise
form in which the plaintiff may be entitled to relief cannot be
determined, until the case is heard on its merits.   The only order
which we can now properly make is.   *Demurrer overruled.*