RICHARDS, appellant, and GREEN, respondent.

1. An unilateral contract will in no case be enforced in equity, unless, at the time of the decree, both parties can be bound by it.

· 2. A *feme covert* cannot obtain a decree for a specific performance of a contract which is not binding upon her.

3. A vendee of land went into possession under a parol agreement to purchase. Afterwards, with his assent, a written promise was given by the vendor, with the consent of the vendee, to convey the premises upon the original terms, to the latter's wife. Specific performance was decreed.

The opinion of the Chancellor is reported *ante p.* 32.

*Mr. C. F. Hill*, for appellants.

*Mr. Frederick Stevens*, for respondent.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

This is a bill for specific performance. The complainants set forth two agreements, the first being oral, whereby the defendant agreed to sell and convey to the complainant, Joseph Green, a certain house and lot, for the sum of $2500, of which consideration the amount of $500 was to be cash, and the residue secured by bond and mortgage. The record of the agreements above referred to was alleged to have been made about a year after the prior agreement, and was in writing, being in the words following, viz.: "This is to show that I agree to sell to Mrs. Capt. Green, house and lot No. 71 Ferry street, for the sum of two thousand five hundred dollars, and that when there is five hundred dollars paid, and the back rent, I will give her a deed and take a mortgage for two thousand." This instrument is signed by the defendant.

A tender of $500, and of a bond and mortgage for the

residue of the consideration money, being made to the defendant, he refused to convey the premises in question.

Part of the argument before this court was directed to the question whether this written agreement was of such a nature as to be enforceable in a court of equity. It was said by the counsel of the defendant that this agreement, being made with a married woman, who is incapable of contracting with respect to the purchase of property, was not mutual; that it was entirely unilateral, and that while it was insisted that the defendant was bound by its stipulations, the complainant, Mrs. Green, was free from all obligation to perform it. If this contract is to be regarded as made with a married woman having no separate estate, and therefore under the usual disability of coverture, both at law and in equity, it appears to me that this objection would be clearly tenable. It is true that there are exceptions to the rule that a court of equity will not perform unilateral contracts, as, for instance, in those cases where an agreement which the statute of frauds requires to be in writing, has been signed by one of the parties only, or when the contract, by its terms, gives to one party a right to the performance which it does not confer upon the other, an example of which is exhibited in the instance of a lease for years which gives an option to the lessee to purchase during the term. But it will be observed that when such contracts come to be enforced in equity, they cease to be unilateral, for upon filing the bill, the party who was before unbound puts himself under all the obligations of the contract. By his own act he makes the contract mutual, and the other party is enabled to enforce it. The consequence is, that in every case that I can find, where specific performance has been ordered, a mutual remedy existed upon it at the time of the rendering of the decree. It seems to me that the rule is universal to this extent, that equity will not direct a performance of the terms of an agreement by the one party, when, at the time of such order, the other party is at liberty to reject the obligations of such agreement. In the present instance, if we look upon the female complainant as incapa-

ble of incurring the obligations of this contract, she would be at liberty to reject any performance on the part of the defendant that might be decreed in her favor, and there would be no method by which she could be compelled to yield to the terms of the contract on her side. Such a posture of parties does not seem to me equitable. I find no case which warrants such a result. A pointed illustration of the opposite rule is afforded by the judgment of the court in the case of *Flight* v. *Bolland,* 4 *Russ.* 298. That was a suit for a specific performance of a contract by an infant, and the bill was dismissed, with costs, on the ground that he was neither originally bound by the contract, nor by the filing of the bill by his next friend. ·The principle of this case is completely applicable to the present bill, so far as relates to the contract made with the feme covert.

In avoidance of this objection an ingenious attempt was made by the counsel of the complainants to convince the court that Mrs. Green was, with respect to the transaction in question, to be regarded as a feme covert possessed of a separate estate. At the time she received the written contract from the defendant, she paid him $100, and the argument is that this was her own money. But this was the money of her husband, and it did not cease to be his until it came to the hands of the defendant. So the $500 which was subsequently tendered belonged to the husband, and there is no ground on which the idea of property in the wife, in such money, can be rested. This latter money was never even in her hands nor in anywise under her control. I think the facts plainly show that the husband was to pay for the premises in question, and that all the money either paid or tendered for that purpose was his own, and that no part of it can be said, without putting an undue force upon the evidence, to ·have constituted a separate estate in the wife. The case, as I think, cannot be safely put upon this ground.

But there is another view of this case.

I think it appears from the pleadings and evidence, with sufficient certainty, that the complainant Joseph Green en-

tered into the possession of these premises under the agreement of the defendant to sell and convey them to him. I observe that the defendant, in his examination as a witness, has denied this fact, but such denial is in strange contrast with the statements in this respect of his answer. It would be difficult to frame a more positive and circumstantial assertion or admission of the circumstance in question than is to be found in the answer of this defendant. In the clearest terms it sets out the parol contract that the complainant was to pay him a certain rent for a year, and that he, the defendant, upon the performance of certain conditions, was to convey the property to the complainant; and it then avers in this language, "that under this last-mentioned agreement, and under or on no other agreement, terms, and conditions, the said Joseph Green entered upon and took possession of the aforesaid premises, and he has held possession of the same, and continues to hold possession thereof at the present time." After so explicit a declaration, the subsequent oath of the defendant is entirely impotent to bring the matter in doubt. I am entirely satisfied that the complainant did go into possession of these premises under an agreement for a title, and that consequently the statute of frauds cannot, in a court of equity, have any application to the transaction.

The only difficulty is to ascertain, to the requisite certainty, the terms of the agreement thus in fact executed. The defendant insists that it was a condition precedent to the conveyance of the property, that the complainant should refrain for a year from the use of intoxicating liquors. This is denied by the complainant, and I am satisfied that although it is highly probable that at the time of the negotiations between these parties, some reference was made to the occasional intemperance of the complainant, and it may be that he even promised to refrain from such vice for the time specified, still such subject did not enter as a stipulation into the bargain between these parties. This, I think, is conclusively manifest from the absence of all reference to the matter in the agreement as it was reduced to writing, at the time that it was

Richards *v.* Green.

agreed that the wife should take the title. I cannot find that there is the slightest ground to suppose that the bargain was altered on that occasion in any respect, except with reference to the grantee. The husband consented that the wife should take the title, and the defendant accordingly wrote out the terms on which he was to convey such title to her. He does not even himself pretend that he made any new agreement, and he is entirely unable to give any satisfactory reason why, in this paper, he omitted the stipulation which he now insists was one of the conditions on which his promise to sell and convey were dependent. In my judgment, this agreement, as written out by the defendant himself, should be taken as conclusive as to the terms on which this property was to be conveyed. This view removes all difficulty from this branch of the case.

With respect to the objection that the agreement is imperfect, inasmuch as it does not appear when the mortgage which is to be given for the balance of the consideration money is to be payable, I concur with the opinion expressed in the Court of Chancery. Where nothing is said about a credit to be given, and there are no circumstances from which an inference can be made that it was the intention of the parties that the time of payment should be postponed, the money is payable immediately.

Mrs. Green is entitled to a conveyance. The reference to the master should be broad enough to ascertain if any part of the purchase money has been paid.

The decree should be affirmed, with costs.

For affirmance—BEASLEY, C. J., BEDLE, CLEMENT, DALRIMPLE, DEPUE, DODD, LATHROP, OGDEN, OLDEN, SCUDDER, VAN SYCKEL, WOODHULL. 12.

For reversal—NONE.