## GRODE vs. VAN VALEN.

1. Land charged with the payment of legacies and interest thereon, when the testator clearly intended that the charge should be a continuing and subsisting security for the payment thereof, cannot be relieved from such charge by the payment by the devisee of the full amount of the legacies, to the executors.

2. The lien of a legacy charged on land, cannot be divested, except by an actual payment or release, or by a decree in a suit in which each legatee, or his personal representative, is a party.

On final hearing on bill and answer.

*Messrs. L.* and *A. Zabriskie,* for complainant.

*Mr. Ackerson,* for defendant.

## THE CHANCELLOR.

The bill is filed to compel specific performance of a contract for the purchase, by the defendant from the complainant, of land in Bergen county. The complainant is the owner of the premises under a deed from George Berry to him. George Berry derived his title under the will of his father, John P. Berry, who, according to the statement of the bill, after devising all his lands to George, bequeathed to another son, Philip, $200, to be paid within two years after the death of the testator's wife, and gave to each of his four daughters the interest for life of $400, (to commence within two years from the death of his wife, and to be paid annually,) the principal sum to be paid to her legal representatives on her death. He then charged the land with the payment of those legacies and interest, and appointed George, and Michael Van Winkle his executors. The testator's widow died on the 5th of August, 1860. On or about the 10th of October, 1863, George, in order to relieve his land from the charge, paid to the executor the full amount of the several legacies. April

1st, 1868, he sold and conveyed in fee part of the devised premises to the complainant, who, about five years afterwards, agreed to sell part of it, free from all encumbrance, to the defendant, who, on his part, agreed to purchase it.

The answer admits all the material statements of the bill, and alleges that the defendant refuses to fulfill his contract, merely from apprehension that the legacies may still be a charge on the land. The only question for consideration is, whether the legacies have been paid or not. · The complainant insists that the payment to the executors discharged the land absolutely and forever, inasmuch as, by the settled rule, land so charged, when once it has borne its burden, shall not be again subjected to it. But the question here is, whether the land has indeed borne the burden. That the testator did not intend that the land should be thus discharged, is evident. No trust is imposed upon the executors, nor any direction given to them, in reference to these legacies. It seems clear, too, that the testator intended that the charge of the legacies to his daughters and their legal representatives, should be a continuing and subsisting security for the payment thereof, for he expressly charges the land not only with the payment of the legacies, but with the interest thereon. He, of course, contemplated the possibility, and perhaps probability, that the lives of his daughters would last for many years after the death of his wife. It would, I am satisfied, defeat his intention, to hold that the principal, with the accrued interest, of the legacies to the daughters and their legal representatives, might, at any time after the death of his wife, be paid over to his executors in discharge of the land, and thus release the security he had by his will provided for the payment of those legacies. It does not appear, nor is it material under the view I take of the subject, how the money was paid to the executors; whether the liability of George Berry's co-executor to the legatees was secured, or whether George Berry alone, merely in some way acknowledged his responsibility for the legacies in discharge of the lien. The transaction, whatever it was, was, so far as the case shows, between him

and his co-executors alone. It does not appear that any of the legatees were consulted. It would, of course, be impossible to consult all who might be in interest, for, until the death of the daughters, it cannot be known who will be their legal representatives.

The transaction in respect to the payment to the executors seems liable to the same objection as the transaction of a similar character, which was under consideration in *Terhune* v. *Colton*, 2 *Stockt.* 21, where it was held that a devisee of land charged with the payment of a legacy, and who was also the executor, could not discharge the land by payment of the legacy to himself as executor. That was not regarded as payment. The lien of a legacy charged on land cannot be divested, except by an actual payment or release, or by a decree in a suit in which each legatee, or his or her personal representative, is a party. *Jenkins* v. *Fryer*, 4 *Paige* 47, 50; *Schanck* v. *Arrowsmith*, 1 *Stockt.* 314.

In Terhune *v.* Colton, the court said : " The will directed that the legacy should be invested and the interest appropriated for the benefit of the legatees; and it secured the payment of the legacy by making it a lien upon the land. Could John C. Schanck (the executor) discharge the land by simply charging the legacy to himself as executor ? If he could, the land was no security for the legacy, and the legatees had nothing better than the mere personal security of the executor. The will makes the legacy a lien upon the land until it is actually paid." As to all these legacies, the rule forbids the discharge of the lien on the land by payment to the executors, except pursuant to authority of the legatees. It does not appear that any of them directed or consented to such payment. Of course, as to the legacies to the legal representatives of the daughters, no consent or direction could be given. The general rule on the subject is stated by Lord Lyndhurst, in *Johnson* v. *Kennett*, 5 *M. & K.* 624, 630. He there said : " The general rule, as to which there is no dispute, is this : Where legacies alone are charged, the purchasers of the real estate are bound to see to the application of the

purchase money. Where debts are charged generally, or where debts and legacies are charged generally, the purchasers of the real estate are not bound to see to the application of the purchase money."

In *Horn* v. *Horn*, 2 *S. & S.* 448, where a trader devised his estates, subject to the payment of lagacies, it was contended, that as the real estate of a trader was, by 47 *Geo. 3, c.* 74, (repealed and re-enacted by 1 *Will.* 4, *c.* 47,) subject to debts generally, the purchaser was discharged from the obligation of seeing that his money was applied in payment of the legacies, as he would have been if the estate had been charged by the testator with the payment of his debts. Sir J. Leach, V. C., however, held that the statute made no difference in this respect. The principle of this decision applies to 3 *& 4 Will.* 4, *c.* 104, which make the real estate of all persons who die after August 29th, 1833, liable to simple contract debts. *Ball* v. *Harris*, 4 *My. & C.* 264.

In *Gardner* v. *Gardner*, 3 *Mason* 178, 218, Story, J., said : " The settled distinction is, that if a trust is created for specific or scheduled debts, the purchaser is bound to see to the application of the purchase money." To the same effect see *Perry on Trusts*, § 796. The writer, of that treatise says : " Where the trust is to pay, from the proceeds of a sale, a particular debt, or scheduled debts only, or to pay certain legacies named, the purchaser must see that it finds its way into the hands of those to whom it belongs. In such case there is no trust that requires time or discretion. The purchase money is simply to be distributed to certain known persons, in sums easily ascertained, and there is no reason to presume that the settler intended that the general rule should not apply." Says Sugden, (*Treatise of the Law of Vendors and Purchasers*, 14*th* [8*th Am.*] *ed.* 358 :) " If an estate is charged with a sum of money for an infant, payable at his majority, and there is no direction to appropriate the money, the purchaser cannot safely complete his purchase, although the money is invested in the funds as a security for the payment of the legacy to the infant when he shall become of age;

for in the event the fund should turn out deficient for the payment of the infant's legacy, he might still have recourse to the estate for the deficiency. And it would seem that even a court of equity cannot, in a case of this nature, bind the right of an infant." And such is still the rule, unless the trustees are expressly or impliedly authorized to sell, notwithstanding the act of 22 & 23 *Vict.*, c. 35, *s.* 23, which enacts that the *bona fide* payment to, and the receipt of any person to whom any purchase or mortgage money shall be payable, upon any express or implied trust, shall effectually discharge the person paying the same, from seeing to the application or being answerable for the misapplication thereof, unless the contrary shall be expressly declared by the instrument creating the trust or security. And where an estate is devised, subject to existing charges, the purchaser must still, notwithstanding the statute just referred to, see the charges duly paid. See *Sheppard* v. *Wilson,* 4 *Hare* 392. Said the court, in *Elliott* v. *Merryman, Barnardiston* 78, 82 : " Where lands are charged with the payment of annuities, those lands will be charged in the hands of the purchaser, because it was the very purpose of making the lands a fund for that payment, that it should be a constant and subsisting fund."

In *Page* v. *Adam.* 4 *Beav.* 269, Lord Langdale, M. R., remarks, that " when an annuity is charged on land, and there is no devise for the payment of debts, and no general charge of debts, it must be deemed that the land was intended to be a constant and subsisting security for the payment of the annuity."

I am of opinion that the payment to the executor did not discharge the land in question from the lien of the legacies. By the contract between the parties, the complainant covenants with the defendant to convey to him the land in question, free from encumbrance. The bill must therefore be dismissed.