The complainant Frederick J. Verney filed his bill to compel the specific performance of a contract entered into with the defendant Annie Dodd for the sale of certain lands in Jersey City. This land was owned by Frederick J. Verney and Irma A. Verney, husband and wife. The sale was negotiated by the Stoeckel Realty Corporation as agents for Verney, on the 15th of April, 1921, for the sum of $14,500, payable one dollar on the execution of the agreement, and by the assignment of a mortgage of $3,000, and, on the delivery of the deed, cash $1,999, and the assumption of the mortgages then on the property amounting to $9,500. Mr. Stoeckel, the *Page 130 
president of the corporation, drew the contract embodying the above terms of payment (which provided for a full covenant, warranty deed, free and clear of encumbrances, excepting the mortgages), and signed the same in the name of the corporation as agent for Frederick J. Verney. This agreement was prepared on the day of its date, and Mr. Stoeckel says the agreement was drawn in triplicate, and he signed one and left it with defendant, and the defendant signed three; that he informed her that he would take the other copies to Mr. Verney to sign, and, within a few days thereafter, he did go to the Verneys and had the contracts signed by Verney and his wife, although the contract, in its terms, ran between Frederick J. Verney alone and the defendant. Stoeckel says that after it was signed by Verney and wife he mailed the original to Mrs. Dodd, expecting her to return her copy to him for his files. Mrs. Dodd says she never received the copy of the contract signed by the Verneys, and she never returned her copy to Stoeckel. In her original answer she says that she signed the contract in triplicate; in her amended answer she says that she signed in duplicate. It is a significant fact, however, that the two copies produced in court are carbon copies, and the original was not produced. I am satisfied that this contract was signed in triplicate.
At the time of the signing of the contract the defendant paid to Stoeckel one dollar, and assigned the $3,000 mortgage, leaving to be paid $1,999 in cash and the assumption of the mortgages, aggregating $9,500, as the balance of the purchase price. Within a few days after the making of the contract the defendant entered into possession and continued therein until December of 1922, a period of about a year and eight months.
A claim is made that the complainant Verney could not file the bill because his wife was not a party to the suit, and thus would not be bound by the decree. By an amendment to the bill, filed May 26th, 1924, Mrs. Verney was brought in as a co-complainant, and alleges therein that she has always been and is now ready and willing to carry out the agreement and execute the deed, c. *Page 131 
The bill charges that, on the execution of the contract, the defendant went into possession of the lands and has enjoyed the benefits and emoluments therefrom, with the exception of about two months' rental of the top floor, which was collected by the complainants or their agent. The possession of the lower floor is admitted by the answer, in which the defendant says that the agent said, as an additional inducement, that she could go into immediate possession of the lower floor of said premises until such time as title was to be passed, rent free, the rent from the top floor to be retained by the owner of the premises; and that, in case the agent could not secure the ten-foot strip hereinafter referred to, the said contracts were to be canceled, and the defendant was to surrender possession of the lower floor unless she could make arrangements with the owner thereof to remain therein thereafter.
Defendant, in both answers, sets forth the understanding of the parties to have been that the defendant signed the contract and assigned the bond and mortgage with the distinct understanding that the contract and bond and mortgage should not be considered delivered until Mr. Stoeckel could procure a deed for the ten-foot strip adjoining (which will be dealt with hereafter). Thus it will appear that, according to defendant's version, upon procuring the ten-foot strip, the contract in question was to be carried into effect.
The title was not passed on the 13th day of May, the date fixed for the purpose. The failure to close on that day was not the fault of the complainants. Afterwards, on July 5th, 1921, Frederick J. Verney and Irma A. Verney, his wife, made their full covenant warranty deed to the defendant in accordance with the terms of the agreement. Frederick, with his counsel and Mr. Stoeckel, thereafter called on the defendant to make arrangements for closing the title, and they say an arrangement was made to pass the title the next day, and the defendant was to have her counsel in attendance. The defendant, however, while admitting the meeting and tender of the deed, says that she made no such appointment for the purpose above stated, but stated that she would have to see *Page 132 
her counsel, Mr. Colgan, who was then out of town. Matters drifted until the 28th of October, 1921, when her attorney. Mr. Story, wrote a letter to the Stoeckel corporation, which, in effect, gave notice of a rescission of the contract. Notwithstanding this letter, she continued in possession of the premises for upwards of a year, namely, from October, 1921, until December, 1922, during which time she paid rent from June, 1922, to November, 1922, under an order of the court; and I find that, until the letter of Mr. Story was written in October, 1921, she regarded the contract as valid and subsisting.
Laying out of consideration at present this collateral agreement, defendant asserts that the contract, as drawn, was not enforcible by the defendant against the complainants on two grounds, namely, that Mrs. Verney's name was not in the body of the contract, and it was therefore not her contract, although signed by her; and second, that she did not acknowledge it, and, considering the character of the estate, a suit by Mrs. Dodd against Frederick J. Verney would avail her little, because Frederick might not survive his wife; thus the contract lacked mutuality.
Assuming that at the time the contract was signed it lacked mutuality, in that the defendant could not enforce the contract against Mrs. Verney, yet, when the complainants, husband and wife, executed a full covenant warranty deed on July 5th, 1921, which satisfied the terms of the contract, and were thus prepared to completely perform the same, which performance was refused by the defendant, and when Mrs. Verney came in as a party complainant in the cause, asking for specific performance, mutuality of contract was then created from which Mrs. Verney could not withdraw, and she was bound thereby.
In the case of Rittenhouse v. Swiecicki, 94 N.J. Eq. 36, an application was made to open a default decree. Vice-Chancellor Leaming, finding, that the defendants were not guilty of negligence, said: "The decree entered against the defendants should be opened and defendants should be permitted to defend if a meritorious defense is disclosed." He then considered *Page 133 
the defense, and said: "But the evidence discloses that the complainants have at all times, not only desired to convey to defendants, but have now acknowledged the contract of sale, and have also executed and acknowledged a deed of conveyance to defendants which they tender. Assuming that there may not have been mutuality of remedy in the first instance, such mutuality clearly exists at this time. Will this court open the decree to permit defendants to file an answer which will avail them nothing? Can the defense be said to be a defense going to the merits of the case when the defense which is now sought to be made cannot be successfully made?" In that case the defense attempted to be set up was that the agreement of sale which was signed by the complainants was not acknowledged, and the title to the land to be conveyed was in the complainant Clara Rittenhouse, wife of the co-complainant. This case, it seems to me, is identical with the one under consideration.
In Gerba v. Metruske, 84 N.J. Eq. 141, Chief-Justice Gummere, speaking for the court of errors and appeals, said: "The prevailing rule with relation to cases of this kind is that where time of performance is not of the essence of the contract the complainant is entitled to a decree if a clear title can be given by him at the time of the making thereof." Richards v. Green,23 N.J. Eq. 536; Woodruff v. Woodruff, 44 N.J. Eq. 349, 355;TenEyck v. Manning, 52 N.J. Eq. 47; Oakey v. Cook, 41 N.J. Eq. 350,364; Moore v. Galupo, 65 N.J. Eq. 194; Agens v.Koch, 74 N.J. Eq. 528.
Here time was not only not of the essence of the contract, but the complainants were always ready and willing to pass the title, and I am satisfied that the refusal to perform by the defendant was not in any manner due to the alleged defect in the contract.
Another point made by the defendant, outside of the terms of the written contract, which aims at the destruction of the contract, is that it was induced by fraud and misrepresentation, consisting in this — a day or two before the contract was signed Mr. Stoeckel, with the defendant and Mr. and Mrs. Anderson, viewed the premises at night. After examining *Page 134 
the house on the inside with a flashlight they walked outside on the lawn in front, and Mrs. Dodd stepped on what was said to be a rhubarb patch, and Mr. Stoeckel said that belonged to the adjoining owner. The defendant says that she then remarked that she would not buy the property where a building might be erected on the lot adjoining right up to the house on the premises in question. Mr. Stoeckel said, "Why, you can buy a ten-foot strip on the side here for $100 a foot front, or $1,000." There is some difference in the testimony of Mr. Stoeckel and the others as to the precise language used, and the time, but, in the main, both parties agree that Mr. Stoeckel said he could procure this strip for the defendant for a thousand dollars. Whether this was such an agreement as would tend to void the contract in toto if the strip were not procured is immaterial in this case. The plain facts are that a Mr. Lynch, who was the owner of the property on the corner bounded by Ocean avenue and Wegman parkway, was willing to sell the strip for a thousand dollars and so informed Mr. Stoeckel, and he held up the sale of his property for four or five weeks in order to sell the ten-foot strip to the defendant. Mr. Stoeckel took up the matter with Mrs. Dodd, and she said she did not have the funds to purchase it. Stoeckel then agreed to let her make the mortgage $15,500, or he would procure for her the addition thousand dollars. It is plain from the whole testimony that this matter was thoroughly threshed out between Mr. Stoeckel and Mrs. Dodd, and that she declined to advance or aid in procuring the necessary funds for the purpose. Therefore, even accepting the defendant's own version of the agreement, namely, that the contract, bond and mortgage should remain in escrow until the ten-foot strip was procured, she must fail, because prior to the date set for the passing of title the ten-foot strip could have been procured if the defendant desired it, and her virtual refusal to take the ten-foot strip then justified the delivery of the contract, bond and mortgage.
A decree will be advised for the complainant, and the counter-claim filed by defendant against Stoeckel will be dismissed. *Page 135