Complainant seeks to have an equitable lien or mortgage impressed in favor of himself and his wife upon certain lands of his mother-in-law who, together with her husband and her daughter, complainant's wife, are made defendants herein. *Page 597 
The basic ground for the desired relief is, as here alleged, an agreement on the part of complainant's parents-in-law to give him and his wife a mortgage upon his mother-in-law's property at 98-100 Broadway, Paterson, pursuant to and upon the strength of which she and her husband obtained from complainant and his wife the sum of $8,556.25.
Upon the conclusion of the case, objection was voiced to complainant's right to maintain his present action in the face of his wife's refusal to join with him therein. In this contention, however, there appears no merit. By rule 6 of the rules of this court, appearing in the schedule appended to the Chancery act of 1915 (P.L. 1915 p. 184), all persons claiming an interest in the subject-matter of the action or in obtaining the relief therein sought, either jointly, severally or in the alternative, may join as complainant and upon declining to do so may be joined as defendant; the reason for so doing being stated in the bill of complaint.
In consonance with the provisions of this rule, the bill having alleged and the proof having shown her refusal to join her husband in his suit against her parents, complainant's wife was subsequently properly joined as defendant therein. This is in accord with the principle enunciated in Oppenheimer v.Schultz, 107 N.J. Eq. 192, where it was said: "It is clear in this state, at least since the Chancery act of 1915 (P.L. 1915p. 184), where a mortgage is given to a man and his wife, and one dies, either the survivor or the executor of the deceased mortgagee may institute foreclosure proceedings, joining as defendant the one who refuses to join as complainant." Were the rule otherwise, its inevitable result in the instant case would be to place it within the power of complainant's wife to prevent him from enforcing his rights and to leave him remediless against her parents by merely refusing to join in the suit with him; a situation disdainful, indeed, to the most rudimentary precepts of common ordinary justice and equity.
As viewed in the light of its plausibility, the evidence clearly and convincingly establishes a promise on the part of complainant's mother-in-law and father-in-law to give the *Page 598 
mortgage or equitable lien here sought and the subsequent receipt by them of the sum of $8,556.25 from complainant and his wife upon the strength thereof. The loan, thus made and received, was first broached on May 1st, 1933, by complainant's parents-in-law on the occasion of their then visit to the home of his parents. It was during the course of a then conversation relative to the critical banking situation, that complainant's parents-in-law spoke of their doubts about the soundness of banks; professed a grave fear for the safety of the money which complainant and his wife then had on deposit therein; and then expressed their willingness to borrow said funds, utilize them towards the payment of an alleged mortgage, then represented by them as being upon the lands in question, and to thereafter give complainant and his wife a mortgage upon said lands, and in that manner afford them not only a sounder security for, but also a greater interest return upon, their said funds.
Impressed with the attractiveness of that offer, but wholly unaware of its potentialities and the real purpose which motivated it, complainant promptly accepted it. When apprised by his parents-in-law of their not needing the funds prior to the day to be thereafter arranged for the cancellation of the alleged existing mortgage, complainant stated that, in view of his contemplated business trip to Florida, he would transfer all of the money to his wife's name alone, so as to enable them, in his absence, to secure it from her as and when they might desire.
These, in brief, are the cardinal facts as testified to by complainant, his mother, and, as per stipulation, his father, all of whom were present on the occasion and participated in the conversations in question. This testimony on their part is abundantly corroborated by the impressive and not unnoticeable frank and candid demeanor of each of these witnesses, by the strong plausibility and probability of the facts as testified to by them, as well as by the prior and subsequent acts and conduct of all of the parties in interest to the present litigation. None of these facts, except for the mere naked and unimpressive denial of defendants, were in anywise here *Page 599 
challenged. As thus viewed, it is in fairness impossible not to give credence to the clear and convincing testimony of complainant and his witnesses that his parents-in-law promised and were to give him and his wife a mortgage on the property at 98-100 Broadway, Paterson, which property then was, and still is, admittedly owned by his mother-in-law, for securing the repayment of the money which she and her husband admittedly received from them.
It might not be amiss to here make passing observation with respect to a few of the irrefutable facts, strongly corroborative of those hereinabove mentioned, viz., the admitted ownership by complainant and his wife of joint bank accounts with deposits therein aggregating at least the sum of $8,500; the apprehensiveness of complainant — following the discussion of May 1st, 1933, between him, his parents and parents-in-law relative to the then recent bank closing with its after attendant acute banking situation and visitation of losses upon numerous depositors — with respect to the stability of banks in general and those wherein he was a depositor in particular; the then indebtedness of complainant's mother-in-law and father-in-law to the Citizens Trust Company of Paterson in the approximate sum of $9,500 on all of which they were charged and paid interest at the rate of six per centum per annum, while their daughter and complainant were receiving but the sum of three and one-half per centum, or less per annum on their deposits; the transferring by complainant of all of said funds to the name of his wife alone within a few days after his expressed intention to do so; the lending of all of these funds, amounting to $8,556.25, by complainant's wife to her parents during the period extending from May 17th to June 1st, 1933, and their utilization thereof for the purpose of partially paying off their intebtedness, already due on May 3d 1933, to the Citizens Trust Company of Paterson.
In addition to the foregoing, it is fairly deducible from the evidence that, then unbeknown to complainant, his parents-in-law had developed and were harboring a strong dislike for him and a still stronger like for the return of the money *Page 600 
which they had previously given to him and his wife as an outright wedding gift, all of which they now begrudged him and under different pretexts on at least two previous occasions had unsuccessfully attempted to regain; that shortly after they finally obtained the funds in question, complainant's parents-in-law caused complainant's wife to become estranged and finally separated from him, and thereafter ordered complainant from their home; complainant's wife, despite his request, having refused to accompany and go to live with him; she herself having unequivocally stated on the witness stand that she would not live with him.
Nor does the fact that no mortgage existed upon the property in question tend to demonstrate, as defendants contend, the incredibility of the testimony adduced on behalf of complainant that his mother-in-law stated there was such a mortgage, the cancellation of which she intended to obtain by means of the funds in question. That fact, on the contrary, cogently bespeaks the verity of that testimony and the untruthfulness of the statement made by complainant's mother-in-law; for it was she, and not complainant or his witnesses, who stated that there was such a mortgage in existence when in truth and in fact there was none. Moreover, this fact also lends forceful support to complainant's claim that his mother-in-law's representation to him with respect to the existence of such mortgage was, as he subsequently discovered, but a mere pretext and ruse on her part to lead him to believe that she then had an existing need for the money as well as a desirable means of securing its repayment with increased interest in order to thus regain from him the funds which she in reality never intended to repay.
Based upon the here established promise of his parents-in-law to give the mortgage in question and their admitted receipt of the money, complainant contends that he and his wife have, and are entitled to, an equitable lien or mortgage on the property in question, upon the principle that equity regards as done that which has been agreed to be, and which ought to have been, done. The almost universally recognized *Page 601 
and now well established rule is that a dedication of, or an agreement to dedicate, property to a particular purpose or debt is regarded in equity as creating an equitable lien or charge thereon in favor of him for whom such dedication is made or intended to be made. Dean v. Anderson, 34 N.J. Eq. 496;Cummings v. Jackson, 55 N.J. Eq. 805; Clark v. Van Cleef,75 N.J. Eq. 152; Rutherford National Bank v. H.R. Bogle Co.,114 N.J. Eq. 571; Payne v. Wilson, 74 N.Y. 348; Chase v. Peck,21 N.Y. 581; Ketchum v. St. Louis, 101 U.S. 306; 25 L.Ed. 999;Walker v. Brown, 165 U.S. 654; 45 L.Ed. 465.
The form that such an agreement assumes is immaterial, since equity looks to its purpose and intent rather than to its form. If there be an intent to give, charge or pledge property, real or personal, as security for an obligation incurred or intended to be incurred, and such property be sufficiently described or indentified, then the equitable lien or mortgage will, in all such proper cases, follow and attach as of course. Robinson v.Urquhart, 12 N.J. Eq. 515; Griffin v. Griffin, 18 N.J. Eq. 104; Brewer v. Marshall, 19 N.J. Eq. 537; Martin v. Bowen,51 N.J. Eq. 452; Oliva v. Bunaforza, 31 N.J. Eq. 395; Ketchum v.St. Louis, supra; Biebinger v. Continental Bank, 99 U.S. 143;25 L.Ed. 271; Richardson v. Wren, 11 Arizona 395;95 Pac. Rep. 124; 16 L.R.A. (N.S.) 190; Hamilton v. Hamilton,162 Ind. 430; 70 N.E. Rep. 535; Pinch v. Anthony, 90 Mass. 536; AtlanticTrust Co. v. Holsworth, 167 N.Y. 532; 60 N.E. Rep. 1106;Sprague v. Cochran, 144 N.Y. 104; 38 N.E. Rep. 1000; Coleman
v. Lakey, 30 N.Y. 330; Payne v. Wilson, supra; Chase v.Peck, supra.
And so, it has been held that lands charged by the provision of a will with the payment of certain bequests or legacies are impressed with an equitable lien to the extent thereof (Grode
v. Van Valen, 25 N.J. Eq. 95; Horning v. Wiederspalen, 28 N.J. Eq. 387; Blauvelt v. Van Winkle, 29 N.J. Eq. 111); that an agreement to give a mortgage on a person's share of his father's estate, creates an equitable mortgage on such share as and when a division is made *Page 602 
(Lynch v. Utica Insurance Co., 18 Wend. 236), and that an agreement to give a mortgage upon a specified piece of property will create an equitable mortgage thereon in favor of the person for whose benefit said promise was made. Dean v. Anderson,supra; Clark v. Van Cleef, supra; Rutherford National Bank v.H.R. Bogle Co., supra; Bridgeport Electric and Ice Co. v.Meader, 72 Fed. Rep. 115; Augusta Trust Co. v. Federal TrustCo., 153 Fed. Rep. 157; In re Farmers Supply Co.,170 Fed. Rep. 502.
Aside from and in addition to the foregoing principles, a court of equity is invested with power to and will enforce an agreement to give a mortgage upon specified lands, even though it be not in writing, where there has been a sufficient part performance to remove it from the bar of the statute of frauds. Young v.Young, 45 N.J. Eq. 27; Stoddard v. Hart, 23 N.Y. 556; Sprague
v. Cochran, supra; Brown v. Drew, 67 N.H. 569;42 Atl. Rep. 177; Bloomfield State Bank v. Miller, 55 Neb. 243;75 N.W. Rep. 569; 44 L.R.A. 367; Edward v. Scruggs, 155 Ala. 568;46 So. Rep. 850. The courts of this state, as well as those of a number of our sister states, have recognized and held that complete performance or payment of the money by him who seeks the enforcement of such an agreement constitutes a part performance thereof sufficient to remove it from the bar of the statute.Dean v. Anderson, supra; Clark v. Van Cleef, supra;Rutherford National Bank v. H.R. Bogle Co., supra; Sprague
v. Cochran, supra; Smith v. Smith, 125 N.Y. 224;26 N.E. Rep. 259; Foster Lumber Co. v. Harlan County Bank, 71 Kan. 158;80 Pac. Rep. 49; Cole v. Cole, 41 Md. 301; Baker v. Baker,2 S.D. 261; 49 N.W. Rep. 1064.
That principle, governing the issues here involved, has already been fully recognized and adopted by the courts of our own state. Amongst those cases are: Dean v. Anderson, supra, where Chancellor Bloomfield, on page 498, said: "Thus far, there is no dispute between the parties as to facts. But it is contended on the part of the defendants, that Anderson's agreement to execute a mortgage on the ferry property at Trenton created no specific lien on that property, but only *Page 603 
a legal obligation personally binding on him, and for the breach of which the complainant can have no remedy but an action at law for damages. When the subject-matter of a contract is real estate, and a sum in damages, which is the only remedy afforded by a court of law, is not an adequate remedy for the non-performance of such contract, a court of chancery will grant relief specifically. Joynes v. Stathan, 3 Atk. 388. * * * An agreement for a mortgage on lands is not a mere personal contract, but affects the realty, and the spirit and justice of it require a specific performance. A party requires security by mortgage because he is unwilling to trust to the personal responsibility of the person with whom he agrees, and to refuse him a remedy against the estate agreed to be mortgaged, is to deprive him of the principal security on which he relied, and to leave him to a remedy which he was unwilling to trust to, and which, in most instances, would not answer the justice of the case. * * * These cases prove that an agreement in writing for a mortgage will be carried into execution by the court, and if an agreement in writing will be enforced, so will a parol agreement, unless made void, and defeated by the statute of frauds. This leads me to consider in the next place whether there are any circumstances in this case to take it out of that statute. The parol agreement for a mortgage on the ferry property is a clear subsequent agreement to that of the 22d of February, 1809, and the terms of it are distinctly and fully made out in evidence; and it as fully and clearly appears that this subsequent agreement has been fully executed on the part of the complainant. Where an agreement has been executed or in part performed by the complainant, and the acts done place him in a situation which is a fraud upon him, unless the agreement is executed, equity will not permit the defendant to protect himself from executing his part of the agreement, by pleading that it was not in writing."
And Clark v. Van Cleef, supra; where the late Chancellor Walker said: "The court will decree specific performance of a contract to give a mortgage upon lands where the contract, although by parol, has been executed on the claimant's *Page 604 
part. Dean v. Anderson, 34 N.J. Eq. (7 Stew.) 496, and reporter's note. Taking the allegations of the cross-bill to be true, which must be done on this motion, the conditions exist which entitle Mrs. Van Cleef to the relief she seeks; that is, the consideration for the mortgage passed from her and that, too, upon her reliance upon the promise of her mother to make the mortgage claimed. On the question of want of equity generally, the defendant fails."
And Rutherford National Bank v. H.R. Bogle Co., supra, where the principles enunciated in Dean v. Anderson, supra;Clark v. Van Cleef, supra, and other cases of like import were discussed and followed.
Nor will the mere failure of such agreement to specify the term and interest rate, or either, of the promised mortgage render it indefinite so as to preclude its enforcement; for in such instances a court of equity will, if necessary, presume it to have been the intention of the parties that the mortgage should be payable on demand and with interest at the legal rate of six per centum. Green v. Richards (Court of Errors andAppeals), 23 N.J. Eq. 536; Reynolds v. O'Neil, 26 N.J. Eq. 223; Oliva v. Bunaforza, supra; Dean v. Anderson, supra;Moore v. Galupo, 65 N.J. Eq. 194; Luczak v. Marlove, 92 N.J. Eq. 377; affirmed, 93 N.J. Eq. 501; South Jersey Furniture Corp.
v. Dorsey, 95 N.J. Eq. 530; Cavanna v. Brooks (Court ofErrors and Appeals), 97 N.J. Eq. 329.
It was testified by complainant, and the evidence demonstrated, that he and his wife, by agreement inter sese, each had a one-half interest in and to all of the funds originally deposited by them in the accounts opened in several banks in their joint names and of which funds the $8,556.25 subsequently loaned to and received by his parents-in-law admittedly was a part.
Complainant's parents-in-law admit the receipt of the said $8,556.25 as well as the fact that they partially paid off their then past due indebtedness to the Citizens Trust Company of Paterson therewith. They, however, in substance now contend that complainant having placed the funds in his wife's name thereby made a gift thereof to her and consequently they *Page 605 
are not indebted to him by reason of which he is not entitled to the relief which he here seeks. This contention, ingenious as it is, lacks merit.
Complainant testified that he transferred the funds to his wife's name alone solely for the purpose of enabling her, in the event of his absence, to make the loan for him to her parents, in accordance with his previous arrangements with them. He also unequivocally denied that he made or ever intended to make a gift thereof to her. In this he is strongly corroborated by the extreme unlikelihood and improbability of his giving up, as a gift to his wife, his one-half interest in all of these funds, constituting as it did all of his then worldly possessions, and thereby completely impoverishing himself; especially in view of the fact that he was then without any independent income or earning capacity, depending entirely upon these funds or the income therefrom, for the livelihood of himself, his child and his wife, who already was, by reason of her own one-half interest in said funds, as affluent as he.
Taken as a whole, defendants' testimony is not free of inconsistencies and improbabilities and is in the main far from being convincing.
In the light of all the here established facts and the law applicable thereto, the complainant is clearly entitled to the relief which he seeks. A decree will be advised in accordance with the views herein expressed. *Page 606