Claypool *et al. v.* The Board of School Commissioners of Indianapolis *et al.*

No. 16,441.

## CLAYPOOL ET AL. *v.* THE BOARD OF SCHOOL COMMISSIONERS OF INDIANAPOLIS ET AL.

SPECIFIC PERFORMANCE.—*Mortgage Securing Bonds.*—*Agreement to Convey in Satisfaction of.*—A. contracted to convey to the City of Indianapolis certain lots, to "be perfect and free from liens and encumbrances," except a certain mortgage securing $60,000 of bonds and the interest coupons thereto attached, due in ten years. A. agreed to put on the lots $14,000 worth of improvements. The city agreed to pay $3,000 rent per annum until the bonds were due, "by taking up the said interest coupons on said bonds as they mature." The city did not assume or agree to pay the mortgage, but if it did its title was thereby to become perfect, and if it paid off the mortgage before maturity, the rent was to terminate from the time of such payment, and all unmatured bonds were to be cancelled and surrendered with the principal bonds. If the city failed to pay off the principal bonds at or before maturity, then it was to convey the lots to the mortgagees free from any encumbrances put on the lots by it. The bonds were executed on the day this contract was executed, and three days later the mortgage to secure them was executed, as well as a warranty deed from A. to the city. A. completed the improvements, and the city took possession. On the maturity of the bonds their assignee demanded from the city a conveyance of the lots to himself, and also demanded of the mortgagees that they bring an action to enforce the specific performance of the contract, which they both declined to do.

*Held,* that the assignee of the bonds was entitled to a decree of specific performance against the city, compelling it to convey the lots to him.

SAME.—*Hardship.—Unforeseen Event.*—A court of equity will not decree a specific performance, as a rule, if there is a hardship and inequality in the contract, or where unforeseen events, over which the parties had no control, have subsequently occurred which would render such a decree a great hardship.

SAME.—*Contract for Third Person.—Acceptance.—Right to Enforce.*—A person for whose benefit a contract has been made can maintain an action upon it for a specific performance thereof, by accepting its terms.

From the Marion Circuit Court.

*S. Claypool* and *J. W. Claypool,* for appellants.

*J. S. Duncan* and *C. W. Smith,* for appellees.

COFFEY, J.—On the 19th day of March, 1880, the appel-

lant Elijah S. Alvord and the board of school commission-
ers of the city of Indianapolis, entered into the following
written agreement, viz. :

"Memorandum of agreement by and between Elijah S.
Alvord, of the first part, and the board of school commis-
sioners of the city of Indianapolis of the second part, all of
the city of Indianapolis, Marion county, Indiana, *Wit-
nesseth :* That whereas the said party of the second part is
desirous to procure suitable offices and rooms for the use and
accommodation of said board, and the use and accommoda-
tion of the public library of said city, it is, therefore, agreed
by and between the parties of the first and second part as
follows :

"*First.* The said party of the first part agrees to convey
to the city of Indianapolis, for the use of the public schools
of said city, on or before the 1st day of September next, by
warranty deed, in which the wife of said party of the first
part shall join, lots five (5) and six (6), in square forty-five
(45), in the city of Indianapolis, Marion county, Indiana,
said title to said lots shall be perfect and free from liens and
encumbrances except a mortgage to the Thames Loan and
Trust Company of Norwich, Connecticut, and S. A. Fletcher
& Co., of the city of Indianapolis, Indiana, securing the
payment of sixty thousand dollars ($60,000) in bonds of $5,-
000 each, with five per cent. (5) interest coupons attached ;
said principal bonds payable in ten years after the 1st day of
January, 1881, and dated the 19th day of March, 1880, bear-
ing 5 per cent. interest from the 1st day of January, 1881,
payable semi-annually ; each bond having twenty interest
coupons attached, and each for the sum of one hundred and
twenty-five ($125) dollars, the first maturing the 1st day of
July, 1881, and on every six months thereafter ; said bonds
and coupons being payable at Fletcher's Bank, Indianapolis,
Indiana, and said mortgage and bonds and coupons executed
by the party of the first part.

"*Second.* Said party of the first part agrees to make last-

ing and valuable improvements on said property between now and the 1st day of next September that will cost at least fourteen thousand ($14,000) dollars, and said improvements to be made according to the plans and specifications made by C. A. Wallingford, architect, and submitted to and accepted by said party of the second part. * * *

"*Third. The said party of the second part agrees to pay rent for said property the sum of three thousand ($3,000) dollars per annum for the term of ten years from the* 1st *day of January,* 1881, *which rent shall be paid by taking up the said interest coupons on said bonds as they mature.* And shall also keep said property in repair, natural wear and tear and unavoidable accidents excepted, and shall keep an insurance of at least fifteen thousand ($15,000) dollars upon said property for the benefit of said mortgagees.

"*Fourth.* The said party of the first part shall give the possession of said property, with the improvements completed, on or before the 1st day of September, and no compensation is to be paid for its use from the time the possession is given to the 1st day of January, 1881, other than is provided by the last clause of article third (3) of this contract—that is to say the insurance shall cover that period.

"*Fifth. The party of the second part does not assume or agree to pay said mortgage, but if it does its title shall thereby become perfect, and if it should pay off said mortgage before maturity, the rent provided for in this contract shall terminate from the time of such payment, and all unmatured coupons shall be cancelled and surrendered with the principal bonds.*

"*Sixth. If the party of the second part shall fail to pay off said principal bonds at or before maturity, then said party of the second part shall convey said property to the mortgagees aforesaid free from any encumbrances put on it by the said party of the second part.*"

On the day of the date of this contract Alvord executed to the Thames Loan and Trust Company, and to S. A. Fletcher & Co. the bonds and coupons described therein,

and on the 24th day of the same month he and his wife joined in a mortgage upon the real estate therein described to secure the payment of said bonds and coupons.

On the day the mortgage was executed Alvord and his wife conveyed the property to the appellee by warranty deed for the nominal consideration of one dollar. Alvord completed the improvements contemplated by the contract prior to the first of September, 1880, and surrendered possession to the board of school commissioners of the city of Indianapolis.

The board of school commissioners took possession of the property on the 1st day of September, 1880, and have ever since continued in the possession of the same, and paid all of the coupons attached to the bonds described in the contract, but have never paid any part of the bonds. Long prior to their maturity the bonds were assigned to the appellant Edward F. Claypool, who is now the owner of the same.

After the maturity of the bonds, viz.: on the 8th day of January, 1891, the appellant Claypool demanded of the board of school commissioners a conveyance of the property described in the contract in satisfaction of the bonds and mortgage so held by him, which conveyance it declined to execute. He also demanded of the mortgagees that they bring an action to enforce the specific performance of the contract, which they declined to do.

This action was brought by the appellant Edward F. Claypool in the Marion Circuit Court to enforce the specific performance of the contract above set out, to which action the appellant Alvord was made a party defendant. Alvord filed a cross complaint in which he prayed that the contract might be specifically performed and that he be relieved from personal liability on the bonds. The case was tried by the court who found, as shown by the special findings in the case, in addition to the facts above stated, that there was due on the bonds at the time of the trial the sum of $62,173.20 and the further sum of $3,000.00 for attorney's fees; that at the

maturity of the bonds the board of school commissioners was unable to pay the bonds for want of funds; that the current expenses of the schools of the city practically consumed the entire amount, which can be produced by levying the full amount of taxes by the law permitted to be levied by it; that since the maturity of the bonds and since the demand for a conveyance, as above stated, the board of school commissioners has effected a contract of sale of the property, conditioned upon the appellant Claypool's releasing it from the contract and mortgage, by the terms of which contract the full amount due on the bonds is to be paid and the remainder of the purchase price paid to the board of school commissioners, but Claypool declines to release his mortgage and asserts that the board has no right to make such sale, but Claypool was never informed of such sale at any time before this suit was instituted. The appellant Claypool brought the bonds and mortgage into court for cancellation upon condition of receiving a conveyance and a decree quieting his title.

Upon the foregoing facts the court stated as conclusions of law:

*First.* That the appellant Claypool was entitled to a personal judgment against the appellant Alvord for the amount of the bonds described in the contract above set out, and the attorney's fees thereon, and to a decree foreclosing his mortgage as to all of the defendants named in the complaint.

*Second.* That the board of school commissioners of the city of Indianapolis was the owner of the equity of redemption of the property in controversy, and was entitled to redeem the same from a sale under the decree within one year from the date of such sale.

Thereupon the court rendered a personal judgment against Alvord for the sum of $65,173.31, and entered the ordinary decree of foreclosure.

It is conceded that all the instruments of writing above referred to are parts of one transaction, and for that reason

are to be treated as constituting but one instrument to be construed as a whole. When so treated and construed we think there is but little difficulty in arriving at the intention of the parties.

The deed of conveyance executed by Alvord and wife, if taken alone, would indicate an intention to vest in the appellee an absolute unconditional fee to the real estate in controversy, but when construed with the contract, which constitutes a part of it, it is clear, we think, that no such intention existed. The payment of rent is wholly inconsistent with such an intention, for we can not conceive of the absolute unconditional owner in fee becoming his own tenant. The payment of rent, however, is consistent with the intention of the parties to vest the title in the appellee for the use of the parties named in the contract, subject to the option of the appellee to become the absolute owner of the property by paying the mortgage debt described in the contract at or before its maturity. The deed and contract did vest in the appellee the use of the property for a period of ten years upon the payment of an annual rent of three thousand dollars, and they also vested in it the fee to the land for the use of the mortgagees, provided the appellee did not choose to exercise the option given it to become the absolute owner by paying the mortgage debt within the time stipulated. We have not deemed it necessary to inquire whether the language used in the several instruments is to be treated as creating conditions subsequent, or whether it is to be construed in the light of a covenant, as, in our opinion, the result is the same in either event. It is agreed that by the terms of the contract between the appellee and Alvord the appellee refused to assume the mortgage debt therein described, and expressly agreed that in the event it did not pay off such debt at or before it became due, it would convey the mortgaged premises to the mortgagees, and that it has not paid, and refuses to convey. Of course it is not the province of the courts to make contracts for parties, but it is

their duty to render such judgments and decrees as will effectually execute contracts when made, unless there is some legal reason for a refusal to do so.

This brings us to a consideration of the argument urged by counsel for the appellee, in their able brief, against the contention of the appellant that the court erred in refusing to decree specific performance in this case on the facts as stated in the special findings.   It is contended by the appellee that the circuit court should not .have decreed specific performance of the contract—

*First.* Because the maxim, "Once a mortgage always a mortgage," applies to the case made by the facts as found by the court.

*Second.* Because a court of equity will never decree specific performance when there is a hardship and inequality in the contract, or, if the contract was fair when executed, subsequent events have occured which render such a decree a hardship on one of the parties, and that under the facts in this case it would be unconscionable to decree specific performance.

*Third.* Because the appellants have an adequate remedy at law, and that a court of equity will not decree specific performance where such remedy exists.

*Fourth.* Because a court of equity will not decree specific performance of a contract in favor of one party in a case where the opposite party is not entitled to a like decree, and inasmuch as the appellee could not compel the mortgagees to take the property in satisfaction of the mortgage debt, they can not compel a conveyance for that purpose.

We will consider these objections in the order in which they are presented.

The maxim, " Once a mortgage always a mortgage," is in accord with the well-known rule that the mortgagor can not renounce or surrender his privilege of redemption beforehand or in the mortgage.   The reason for the rule is that the necessities of such mortgagor may have driven him to

make ruinous concessions in order to raise the money secured by his mortgage. Jones Mortgages, section 251.

At common law the legal title was vested in the mortgagee, and was forfeited upon default, but equity established the right of redemption after default. Equity, however, did not attempt to alter the legal effect of the forfeiture which followed a breach of the condition, but it regarded it as a penalty, against which the mortgagor should be relieved upon payment of the debt secured by the mortgage. In order that the mortgagor should in no event lose his equity of redemption, the maxim above quoted was adopted by the courts of equity. But we are unable to perceive what application the maxim has to the case now before us. There is here no contract between the mortgagor and mortgagees whereby the mortgagor has agreed to convey the mortgaged premises in satisfaction of the mortgage. The facts here present a case where the mortgagor is insisting that the mortgaged premises shall be applied to the satisfaction of a debt for which he is personally liable, in strict accordance with an agreement made between him and a third person to whom the property has been conveyed for that purpose.

The question is not one as to whether the mortgage executed by Alvord and wife is still a mortgage, but the question is, shall the appellee be compelled to perform its agreement with Alvord to pay the mortgage by a conveyance of the land, and thus relieve him from personal liability? Had there been an agreement between the mortgagor and mortgagees, whereby the land was to be conveyed to the mortgagees in payment of the mortgage debt, and the land had been conveyed to the appellee without special agreement under such circumstances as that the appellee had acquired all the rights in the land possessed by the mortgagor, then, as against the mortgagee, the maxim would apply.

But such is not the case presented by the record. We have a case in which the mortgagor is insisting that his liability shall be extinguished with the mortgaged premises

under a solemn covenant made with him by the appellee to the effect that it should be so extinguished. Under such a state of fact we do not think the appellee can shield itself under this maxim to the injury of the mortgagor, whose debt it agreed to extinguish by a conveyance of the land.

It is undoubtedly true that a court of equity has much discretion in the matter of decreeing specific performance, but such discretion is bounded by well defined and well understood rules. It will not decree such performance, as a rule, where there is a hardship and inequality in the contract or where unforeseen events, over which the parties had no control, have subsequently occurred which would render such a decree a great hardship. Pomeroy Specific Performance, sections 177, 183 and 185; *Randolph* v. *Quidnick*, 135 U. S. 457.

And this leads us to inquire what equities, if any, the respective parties to this controversy present for our consideration.

If the appellee were here ready and willing, and was proposing to pay off and discharge the mortgage debt, the appellant Claypool would have no equity, for ordinarily a mortgagee is entitled to nothing more than the debt which the mortgage secures. The appellee's claim is wholly without equity, for it has not invested a dollar in the property which is the subject of this suit. It has occupied the property for ten years, and has paid the agreed rent and nothing more.

The appellee stands in the attitude of holding on to property in which it has not invested a cent, and repudiating its solemn agreement upon the alleged ground that it can sell it for enough to pay the mortgage and have a surplus.

The case with Alvord, however, is quite different. He comes here with substantial equities. If there is any one thing more plain than another in the transaction we are investigating, it is that Alvord was seeking to shield himself from personal liability on account of the bonds he was exe-

cuting to the mortgagees. When the appellee refused to assume the payment of the debt, we have no reason to believe that Alvord would have conveyed to it the property in controversy, had it not been for its express agreement to shield him from liability by either electing to pay the mortgage debt in cash at or before its maturity, or by conveying to the mortgagees the property in satisfaction of the debt. To deny his application now for specific performance leaves him wholly without any adequate remedy for a breach of the contract between him and the appellee. By its refusal to comply with the contract the appellant Claypool has been enabled to take a personal judgment against him for more than sixty-five thousand dollars, the very thing which the contract was intended to prevent. Furthermore, the principal debt has been increased three thousand dollars by the addition of attorney's fees. It is no excuse to say that the property is of sufficient value to pay this enormous judgment, for we know that property does not always bring its full value at forced sale. Should the property mortgaged fail to sell on the decree rendered in this case for a sum sufficient to pay this debt, then the mortgagor, Alvord, if he has other property subject to execution, is at the mercy of the mortgagee, and this by reason of the refusal of the appellee to keep its agreement with him. If his property is levied upon and sold for the payment of the balance due, what remedy has he against the appellee? It has never agreed to pay the debt otherwise than by a conveyance of the property.

The finding of the court in relation to a contract made by the appellee for a sale of the property is too vague and uncertain to aid the appellee in this case. From the finding we know nothing as to the pecuniary ability of the party with whom it is made. We are not informed as to whether it is verbal or written, or of such a nature as to be enforceable, or whether the remainder after the payment of the

mortgage, even if it is complied with, will be one dollar or five hundred dollars.

To aid the appellee on the ground that time is not of the essence of the contract between it and Alvord, it should be in a condition now to pay the debt and prevent a personal judgment against him, or it should at least tender such security for his indemnity as would leave no reason to doubt that he is secure from loss. *Sanborn* v. *Woodman*, 5 Cush. 36; *Hancock* v. *Carlston*, 6 Gray, 39.

In our opinion the equity is with Alvord, and not with the appellee. It would not be a hardship upon the appellee to enforce specific performance of its contract, but it would be a hardship upon the appellant Alvord to refuse it.

We have already answered the objection that the parties have an adequate remedy at law. In our opinion the appellant Alvord has no adequate remedy outside of the specific performance of the contract made with him by the appellee, by which it agreed to convey to the mortgagees the property in controversy in satisfaction of the mortgage. The appellee does not suggest any other tangible means of relieving him of his personal liability on the bonds which he executed to the mortgagees.

It is ordinarily true that the right to specific performance must be mutual between the parties to the contract, and that such mutuality must exist at the time the contract is made, but the rule is by no means of universal application. *Vassault* v. *Edwards*, 43 Cal. 465; *Marble Co.* v. *Ripley*, 10 Wall. 339; Pomeroy Specific Performance, sections 162–166; *Allen* v. *Cerro Gordo Co.*, 40 Iowa, 349; *Green* v. *Richards*, 8 C. E. Green, 32; *Justice* v. *Lang*, 42 N. Y. 493; *Raymond* v. *Pritchard*, 24 Ind. 318; *Hixon* v. *Cuppy*, 33 Ind. 210.

In his valuable work on Specific Performance of Contracts, section 166, Mr. Pomeroy says: "An agreement may be perfect in its obligations upon both the parties, and yet be of such a nature that one of them only could be compelled, by

a decree of the court, to specifically perform. As the absence of this kind of mutuality does not render the agreement any less obligatory, it would seem, on principle, that if the quality, originally lacking, should be subsequently supplied, in any practical manner, before the commencement of the suit, or even, perhaps, before the hearing, the objection would then be removed, and a specific enforcement would be thus made possible."

It is upon the principle here set forth that the case of *Denlar* v. *Hile*, 123 Ind. 68, and similar cases rest.

It has long been a familiar rule in this State that a third party, for whose benefit a contract is made, may sue upon such contract in his own right. *Leake* v. *Ball*, 116 Ind. 214; *Bateman* v. *Butler*, 124 Ind. 223 ; *Gwaltney* v. *Wheeler*, 26 Ind. 415 ; *Waterman* v. *Morgan*, 114 Ind. 237.

The contract before us was of no binding force on the holders of the bonds and mortgage executed by Alvord until they had accepted it. After such acceptance, however, we know of no reason why it should not be held to bind them as well as the immediate parties to it.

In this case the property in dispute was conveyed by Alvord and wife to the appellee with an option to become the absolute owner of it at any time prior to the maturity of the bonds secured by the mortgage by paying off such bonds. It is not claimed that the appellee ever availed itself of such option. Having failed to do so within the time fixed by the contract, and the time which it was entitled to occupy the property upon the payment of the stipulated rent having expired, it ceased, in our opinion, to have any interest in such property. It held the legal title as a mere trustee for the benefit of the party to whom it expressly agreed to convey it. Such trusts are always enforced by a court of equity upon proper application.

Perry on Trusts, section 98, says :    " But if the trust is perfectly created, so that the donor or settlor has nothing more to do, and the person seeking to enforce it has need of no

further conveyances from the settlor, and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect, at the suit of the party interested, although it was without consideration, and the possession of the property was not changed. And this will be true although the person who is intended to be benefited has no knowledge of the act at the time it is done, provided he accepts and ratifies it when he is notified."

The trust here, so far as Alvord is concerned, is fully executed. The beneficiary has brought his bonds into court for cancellation, and prays that the title held by appellee for his use be transferred to him, while Alvord, who created such trust, and over whom a large personal liability hangs, joins in the prayer. To deny this relief is to permit the appellee to openly repudiate its obligation and to deny Alvord the only adequate remedy he has for his protection against a heavy personal liability which the appellee agreed to extinguish. Our attention has not been called to any rule which would, in our opinion, require a court of equity to give its sanction to such an injustice. We are of the opinion that the circuit court erred in its conclusions of law upon the facts found in this case. It should have entered a decree, upon these facts, for a specific performance of the contract set out in this opinion.

Judgment reversed, with directions to the circuit court to restate its conclusions of law in accordance with this opinion, and to render the proper decree thereon.

ELLIOTT, J., took no part in the decision of this cause.

Filed June 16, 1892; petition for a rehearing overruled Oct. 5, 1892.