## HAMILTON ET UX. *v.* HAMILTON.

[No. 20,259. Filed April 5, 1904.]

CONTRACTS.—*Inadequacy of Consideration.—Specific Performance.*—Mere inadequacy of consideration is not in and of itself a sufficient reason for refusing specific performance. *p. 436.*

SAME.— *Consideration.— Contract for Benefit of Third Person.—Specific Performance.*—In a suit to establish and enforce a lien against certain real estate, it was shown that defendant's husband, being in failing circumstances, deeded certain real estate to his wife and the remainder of his property to trustees in trust to pay his debts. The trustees disposed of all the property but one tract of land, and paid all the debts except a debt of $3,000 secured by a mortgage on the unsold tract of land, and a debt of $1,373.42 for which one of the trustees and the defendant's husband executed their note. Defendant thereafter entered into an agreement by which she was to exchange the property conveyed to her by her husband for a mill, the grantee to assume a mortgage thereon and pay $1,014.45 in cash, $1,000 of which was to be applied on the mortgage on the tract of land remaining unsold, and which was afterward conveyed to defendant, and it was further provided in the agreement that a certain person named should be appointed trustee to receive the rents and profits from the mill property, and apply the same (1) to the payment of the mortgage thereon; (2) to the note of $1,373.42 executed by her husband and trustee; (3) taxes which had accrued against the property conveyed by her; (4) any incumbrance or charge on said property by reason of any debt of her husband which the grantee might be compelled to pay. It was further provided that if defendant should receive a deed to the property she and her husband should execute a mortgage thereon to the trustee to pay the four items enumerated. The trustee appointed refused to act, but the mill property was conveyed to defendant. The trustee was compelled to pay the note executed by him and defendant's husband, and brought suit thereon as aforesaid. *Held,* that the undertaking was original and primary in its character, and that defendant was the principal therein, that it was not without consideration, and could be enforced by plaintiff. *pp. 431–437.*

PRINCIPAL AND SURETY.—*Payment of Debt by Surety.—Recovery.—Interest.*—Where a wife for a consideration benefiting her estate agreed to execute a mortgage to secure a debt which plaintiff had been compelled to pay as surety for her husband, the plaintiff in a suit to establish and enforce a lien against the real estate so benefited is entitled, under §1233 Burns 1901, to recover interest at the rate fixed in the note he was required to pay. *pp. 437, 438.*

MORTGAGES.—*Failure to Execute.—Specific Performance.*—Where defendant and her husband refused to execute a mortgage on the land of the for-

mer in accordance with an agreement entered into, and for a consideration beneficial to such real estate, for a debt of the husband long overdue, they can not complain of a decree charging the indebtedness upon the land, and ordering a sale thereof.  *p. 438.*

From Whitley Circuit Court; *J. W. Adair,* Judge.

Suit by Samuel Hamilton against David Hamilton and wife. From a judgment for plaintiff, defendants appeal. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*T. R. Marshall, P. H. Clugston, W. F. McNagny* and *J. W. Arthur,* for appellants.

*A. A. Adams, N. G. Hunter* and *Alvah Taylor,* for appellee.

Gillett, C. J.—This suit was instituted to establish and enforce a lien against certain real estate belonging to appellant Abigail Hamilton. No further statement concerning the issues need be made, in view of the posture of the case on appeal. Pursuant to request, the trial court filed special findings of fact, together with conclusions of law. There was a judgment in favor of appellee in the sum of $1,103.50 against appellant David, and a decree adjudging that said real estate was subject to a lien on such account, and ordering said real estate sold to pay said amount.

The errors assigned question each of the conclusions of law, and also the action of the court in overruling the motion for a new trial.

Stated in a form to some extent condensed, the facts found specially are as follows: November 13, 1888, said David Hamilton, being in failing financial circumstances, executed two deeds. The first deed was to his wife, Abigail Hamilton, and described a number of pieces of property, one of which, characterized in the findings as the "business property," was worth $7,000, and was encumbered by a mortgage for $2,750 and interest. It is found that she paid no consideration for the latter prop-

erty. The second of said deeds was to appellee and to Levi J. Noftzer, and conveyed 420 acres of land, in trust, to pay out of the proceeds of sales thereof twelve items of indebtedness of the grantor, aggregating $15,650, and the expenses of the trust, and to pay the balance to said Abigail. The grantees mentioned in said deed of trust effected a sale of all of said land, except a tract of 120 acres, and with the proceeds of said sale paid all of said debts, except an amount owing to one James O. Cole and $3,000 due to one Freiburg, which latter sum was secured by mortgage on said unsold tract of land. The amount due Cole stood seventh in the order of priority fixed in the deed, but the trustees, believing that they would be able to realize enough to pay all of the debts, at the request of said David, applied the money received by them from such sale on other debts mentioned in said deed, with the result that on October 18, 1889, said indebtedness to Cole remained unpaid. On said day said David and appellee, the latter describing himself as "trustee," executed a note in settlement of the amount due Cole, which was then $1,373.42. The note was payable one year after its date.

On June 9, 1891, when the affairs of the trust were in the condition above indicated, appellants and one Tyler entered into a contract, by which appellant Abigail was to deed said business property to Tyler, and the latter was to turn over to her his interest in a flour-mill, subject to a $750 mortgage. An option of purchase was outstanding on the latter property in favor of certain tenants. By his contract Tyler assigned the contract and lease of his tenants to said Abigail, and covenanted to make her a deed if said tenants did not purchase. Tyler, in addition, was to assume, and agree to save appellants harmless from, the mortgage on said business property, which then amounted to $2,735.55, and he was to pay $1,014.45 in cash, $1,000 of which was to be applied on said Freiburg mortgage. It was further provided in said contract, for

the recited purpose of "relieving all of said property from any liabilities which are claimed against said real estate," that one Noftzger be appointed a trustee to receive the proceeds of said option contract and to collect the rents, and he was directed to apply the moneys received by him to pay: (1) The $750 mortgage, (2) the Cole note, (3) taxes which had accrued against said business property, (4) any encumbrance or charge on said business property by reason of any debt of said David which Tyler might be compelled to pay, (5) the expenses of the trust created by said contract and the expenses of said prior trust, and the balance, if any, said trustee was directed to pay to said David. It was further provided that if said Abigail should receive a deed for said property, she and her husband would execute a mortgage to said trustee to pay the liabilities imposed by the first four of said numbered items. As a part of said transaction, and upon the considerations stated in the contract, the trustees of said former trust deeded said 120-acre tract of land to said Abigail. She accepted said deed and caused it to be recorded, and she accepted also the lease mentioned in said contract. She joined her husband in the execution of a deed to Tyler for said business property. Tyler paid the $1,000 to Freiburg, as had been agreed, and also paid the mortgage on said business property. On October 22, 1893, said tenants having refused to take said mill property, Tyler executed a deed to said Abigail for said property, in which deed it was recited that it was made subject to all of the conditions of said contract between said parties. It is expressly found that she accepted this deed and caused it to be recorded.

It was further found that the trustees of said first-mentioned trust duly executed and discharged the same. Appellee was compelled to pay, as surety, $1,103.50 on said Cole note, which payment fully satisfied said note. Noftzger refused to act as trustee under the Tyler contract, and

failed, neglected, and refused to make demand of said Abigail that she execute a mortgage as provided in said contract. On or about December, 1893, subsequent to the acceptance of said deed to the mill property, appellee "made and tendered a mortgage to the defendant, and made demand for the execution thereof, to secure the payment and discharge of said Cole debt, so paid by said Samuel, in pursuance of said contract sued upon, which demand wes refused."

The eleventh and seventeenth findings of the court are as follows: "(11) That in the execution of said contract sued on, and the undertaking by her to pay the debt of James O. Cole, as therein stipulated and expressed, she did not become surety for the payment of said debt, but the same was an original undertaking and promise on her part for the purchase money for said mill property, and is part of the consideration for said contract." "(17) That the contract of June 9, 1891, was fully read over, and its contents and provisions explained to the defendants and each of them, at and before the same was signed, and that no fraud or misrepresentation was practiced or made to induce defendants, or either of them, to sign the same."

The conclusions of law were stated as follows: "The court therefore concludes, as a matter of law from the foregoing facts, that said defendant David Hamilton is indebted to said plaintiff Samuel Hamilton in the sum of $1,103.50; that the same is and ought to be declared a lien on said mill property, as described in said contract of June 9, 1891, and that, in default of the payment of said sum, said lien ought to be foreclosed, and the said property ordered sold to pay the same."

In briefing this cause appellants' counsel have omitted so to classify their points that it can be determined in each instance whether the point is urged with reference to the validity of a conclusion of law, or whether it is presented as a ground for a new trial. In view of this we shall, in

the main, consider the argument for a reversal in the order of its presentation upon the brief.

It is strongly urged upon our consideration by counsel for appellants that the evidence shows that the contract of June 9, 1891, was procured from said Abigail by sharp and unscrupulous practices, if not by actual fraud; that the parties did not meet on an equality, and that the contract obtained was of such a harsh and unconscionable character that a court of equity should refuse to order it specifically performed. We have carefully read the evidence in the case, and have reached the conclusion that there was not such an uncontradicted showing as would warrant us in overthrowing the finding. If we were to look only to the testimony of appellants, a pretty strong case would be presented, but both are disputed upon many vital points by other witnesses. It is not questioned that said David fully understood the character of the business transacted on said day. If he was not honestly representing his wife's interests at that time, but was seeking rather to get his debt paid by imposing it on her, the evidence strongly tends to show that appellee was not aware of such unfaithfulness. The contract was read over to her, and she had the opportunity of fully acquainting herself with the facts. The trial court did not find in favor of said Abigail on her averments as to the circumstances in which she was induced to execute the contract, and in view of the testimony we are bound by this result.

It is argued that she had an equity in said business property of about $4,200, and that the transaction she entered into involved a clear sacrifice of her interests. In determining what was best for her to do in the circumstances which the evidence shows to exist, the problem was not altogether clear. Cole was demanding that some arrangement be made better to secure his debt. The mortgages on the business property and on the 120-acre tract of land were due, and the mortgagees were seeking payment. Assum-

ing the values of the properties exchanged to be as disclosed by the special finding, it appears that by the exchange she incurred a loss to the extent of the debt due Cole, and assumed a mortgage debt of $750 upon the mill property; but, on the other hand, she was relieved from the payment of a much larger mortgage on the business property, and procured $1,000 to be applied upon the mortgage upon the farm. In addition, the arrangement involved the closing up of the first trust, and the investing her with title to the remaining farm land, subject to a $2,000 mortgage. Moreover, the debt to Cole which she was assuming was one that was already hanging over her husband, so that if she paid it she would be at least relieving him to that extent, a fact calculated to appeal to a wife who was not altogether self-centered. There was oral evidence to the effect that the provision in said contract that the balance of the proceeds received by the trustee should be paid to said David was inserted so that he could draw the money for her. The court below did not find upon this point, but it is immaterial, for, as the lessees did not elect to purchase the mill property, and as said Abigail consequently took a deed for the same, said provision never became operative.

It was not essential, however, to the enforcing of said contract, that it should have appeared that said Abigail received in benefit to her estate the full value of what she surrendered. Mere inadequacy of consideration is not in and of itself a sufficient reason for refusing specific performance. Fry, Spec. Perf. (3d Am. ed.), §§418-426; Pomeroy, Contracts, §194; Note to *Seymour* v. *Delancy*, 15 Am. Dec. 299; 26 Am. & Eng. Ency. Law (2d ed.), 26, 27.

It cannot be said that there was no consideration for the promise to pay the indebtedness to Cole. The contract was entire in its character, and the considerations which moved to said Abigail went to the support of the undertaking on which this action is based. *Jordan* v. *Indianapolis Water Co.*, 159 Ind. 337.

The promise to pay said indebtedness was one of which appellee had a right to avail himself. *Claypool* v. *Board, etc.,* 132 Ind. 261. No one could doubt, as it seems to us, that as a contract made for his benefit appellee had a right to take advantage of it. The consideration moving from Tyler was sufficient to support the contract. Even a mere option, if founded on a valuable consideration, may be enforced. 26 Am. & Eng. Ency. Law (2d ed.), 30; *South, etc., R. Co.* v. *Highland Ave., etc., R. Co.,* 98 Ala. 400, 13 South. 682, 39 Am. St. 74.

Said Abigail has no cause of complaint because the indebtedness to Cole was not paid in the order of its priority. She was not a party to the deed to said trustees, and had no interest in the proceeds of sales made by them until after all twelve of the items of indebtedness mentioned in said instrument were paid, so that the order of their payment could not concern her.

The fact that appellants engaged to execute a mortgage conditioned to pay the debt to Cole did not make said Abigail a surety. Upon a consideration which moved to her estate, she undertook, as principal, to pay such debt. Looking at the contract as an entirety, it is evident that it was the purpose of the parties, in so far as they were authorized to bind all concerned, to cast upon the property of said Abigail the burden of paying the whole debt. The undertaking was original and primary in its character, and she was the principal therein. The eleventh finding, when taken in connection with the findings as a whole, shows that she was not a surety.

A question is raised by appellants' counsel as to the sufficiency of the demand made by appellee for the execution of the mortgage, but the point made, as we understand it, goes only to the question as to the power of said Abigail to make the debt of her husband a primary obligation as to her.

We perceive no element of uncertainty in the contract relative to the execution of the mortgage. Taking the whole contract together it must be said that the mortgage was payable presently, and as appellee became, as between him and said Abigail, a surety, we think that the note to Cole fixed the rate of interest. §1233 Burns 1901.

There having been a refusal to execute a mortgage to pay a debt long overdue, appellants cannot complain of a decree charging the indebtedness upon the land and ordering a sale thereof. It having become necessary for the trial court to exercise its equitable jurisdiction in appellee's behalf, it was proper, in the circumstances, for the court to continue its active jurisdiction until full justice was done between the parties. *Brace* v. *Doble*, 3 S. D. 110, 52 N. W. 586; *Peake* v. *Young*, 40 S. C. 41, 18 S. E. 237; 20 Ency. Pl. & Pr., 479.

A question has been raised as to the propriety of the finding that said Abigail was not a purchaser for value of the land conveyed to her in 1888. In the view we take of this case it was immaterial whether she was a purchaser for value or not.

We observe that in addition to the decree fixing a lien upon the real estate, and ordering it sold in case of non-payment, there was also a personal judgment against said David. No question is made upon this point, and we do not therefore determine whether he was liable.

Judgment affirmed.